1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| A.L., on behalf of his minor child, E.L., <br><br> Plaintiffs, <br><br> v. <br><br> MANHATTAN BEACH UNIFIED SCHOOL DISTRICT, <br><br> Defendant. | Case No. 2:24-cv-04667-AB-MBK <br><br> **FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

Before the Court is an appeal on the administrative record brought by student E.L. ("Student"), his mother ("G.C."), and father ("A.L.," and together with G.C., "Parents") (collectively, "Plaintiffs"), and Defendant Manhattan Beach Unified School District ("MBUSD" or "Defendant"). Plaintiffs and Defendant each seek to overturn portions of Administrative Law Judge ("ALJ") Cararea Lucier's decision (Dkt. 30-1, the "ALJ Decision"), pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.* ("IDEA"). Parents and MBUSD each filed a complaint to initiate their respective appeals of the ALJ Decision. (Dkt. No. 1, "Student Compl."; Dkt. No. 30, "MBUSD Compl."). On August 2, 2024, the Court granted the parties' stipulation to consolidate the cases. (Dkt. No. 26).

On June 20, 2025, Plaintiffs filed their Principal Trial Brief ("PPB," Dkt. No. 63) and MBUSD filed its Principal Trial Brief ("DPB," Dkt. No. 62). On July 25, 2025,

Plaintiffs filed their Opposition Trial Brief ("POB," Dkt. No. 65) and MBUSD filed its Opposition Trial Brief ("DOB," Dkt. No. 64). On August 8, 2025, Plaintiffs filed their Reply Trial Brief ("PRB," Dkt. No. 68) and MBUSD filed its Reply Trial Brief ("DRB," Dkt. No. 67). The matter is thus fully briefed. Upon review of the parties' briefs, the extensive Administrative Record ("AR Vol. I," Dkt. No. 44-1; "AR Vol. II," Dkt. No. 44-2; "AR Vol. III," Dkt. No. 44-3), and Parents' supplement evidence (Dkt. No. 61), the Court found this matter appropriate for decision without oral argument and vacated the hearing set for October 24, 2025. *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15; (Dkt. No. 74). For the following reasons, the ALJ Decision is **AFFIRMED**.

Functionally, this action in federal court is an appeal of the ALJ Decision. However, sometimes it is viewed as a trial based on the administrative record. *Compare Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1472 (9th Cir. 1993) (IDEA claim review is "essentially . . . a bench trial based on the stipulated record"), *with Capistrano Unified Sch. Dist. v. Wartenberg*, 59 F.3d 884, 892 (9th Cir. 1995) (review is "in substance an appeal from an administrative determination"). Accordingly, the following constitutes the Court's Findings of Fact and Conclusions of Law.[1] Fed. R. Civ. P. 52(a).

# I. FINDINGS OF FACT

## A. Student's Background

At the time of the administrative hearing, Student was a seventeen-year-old private school student who resided with his Parents and sibling within Manhattan Beach

---

[1] The Court elects to issue its decision in narrative form because a narrative format more fully explains the reasons behind the Court's conclusions, which aids appellate review. Any finding of fact that constitutes a conclusion of law is hereby adopted as a conclusion of law, and any conclusion of law that constitutes a finding of fact is hereby adopted as a finding of fact. *Juan Pollo Franchising, Inc. v. B&K Pollo Enters., Inc.*, 2015 WL 10695881, at *1 n.1 (C.D. Cal. Aug. 6, 2015); *see also Vance v. Am. Haw. Cruises Inc.*, 789 F.2d 790, 792 (9th Cir. 1986) (holding Rule 52(a)'s purpose is "achieved if the district court's findings are sufficient to indicate the factual basis for its ultimate conclusions").

Unified School District. (PPB at 7, 9).[2] Parents moved to Manhattan Beach in April 2022. (*Id.* at 7). Student is a child with a disability as defined under 20 U.S.C. § 1401(3)(A)(i) and is a child with exceptional needs as defined by California Education Code section 56026. (Student Compl. ¶ 3). Student is diagnosed with Attention Deficit Hyperactive Disorder ("ADHD"), Dyslexia, and Dysgraphia. (AR Vol. I at 8). Student is an active and social teenager who enjoys taking walks with his family, playing basketball, and getting boba drinks with friends. (AR Vol. III at 317).

Student was first found eligible for an individualized education plan ("IEP") in second grade while attending a public school within the Wiseburn Unified School District ("WUSD"). (AR Vol. III at 211–12). Student remained enrolled within WUSD through third grade and enrolled at the Prentice School, a private school, for fourth grade. (*Id.* at 319–20). Student then enrolled in Rolling Hills Preparatory School, a private school, for fifth and sixth grade. (*Id.*). For grades seven[3] and eight, Student enrolled in Adams Middle School, a public school within the Redondo Beach Unified School District ("RBUSD"). (*Id.*). Student then enrolled in Redondo Union High School, an RBUSD public school, for ninth grade. (*Id.*). Student was reassessed for IEP eligibility, and found eligible, by RBUSD in 2019. (AR Vol. I at 322–23; 343–64). RBUSD later developed an IEP for student in November 2021. (*Id.* at 322–42). For grades ten and eleven, Student enrolled in the Westmark School ("Westmark")—a private school specializing in educating children with learning disabilities. (*Id.* at 10; AR Vol. III at 321).

### B.    April 2023 Correspondence with MBUSD

On April 3, 2023, Timothy Adams ("Adams"), Parents' attorney, sent Dr. Kristopher Vegas ("Vegas") a letter via email stating Parents retained Adams's firm to handle educational matters for Student. (AR Vol. I at 318–19). The letter requested (1)

---

[2] All record citations reflect CM/ECF pagination.

[3] Student attended Rolling Hills Preparatory School for part of seventh grade before transferring to Adams Middle School for the remainder of that year. (AR Vol. III at 114).

Student's educational record, (2) that MBUSD develop an interim IEP and convene a thirty-day IEP meeting, and (3) that MBUSD provide a comprehensive assessment plan for Student's triennial review which came due in November 2022. (*Id.*). With the letter, Adams included (1) an authorization form Parents signed to permit MBUSD to release Student's record to Adams's firm, the IEP assessment RBUSD conducted in 2019, and (3) the IEP RBUSD developed for Student dated November 10, 2021. (*Id.* at 318–64). That November 10, 2021, IEP included a section labeled "Consent" which provided check boxes to indicate whether Parents consented to (1) the entire IEP, (2) portions of the IEP, or (3) none of the IEP; under those boxes is a parent or guardian signature line. (*Id.* at 337). In the Consent section of Student's November 10, 2021, IEP Adams provided to MBUSD, there was neither a box checked, nor a signature provided. (*Id.*).

On April 4, 2023, Mary Jo Griss ("Griss")—an Office Specialist with the Special Education Department of MBUSD—responded via email to confirm receipt and state neither MBUSD nor Mira Costa High School ("Mira Costa") had any records for Student. (*Id.* at 315). Adam's assistant, Claire Goldstein ("Goldstein"), responded eleven minutes later but failed to address Griss's concern; Goldstein wrote, "Thank you, received and acknowledged. We await the District's IEP meeting notice and assessment plan as requested in the letter." (*Id.*).

On April 14, 2023, Griss responded to Goldstein to reiterate Student "has never attended a school within" MBUSD; Griss also stated Vegas would reach out to Adams within a few days. (*Id.*). Later, on April 14, Adams responded via email to inform Vegas his clients would register and verify residency as soon as possible. (*Id.* at 314). Vegas emailed Goldstein later that same day to inform her he had left a voicemail with her colleague and wanted to follow up via email; Vegas reiterated MBUSD had no record of Student attending any of its schools, requested Student's current address, and offered to help Student enroll. (AR Vol. II at 101).

## C.    G.C. Provides Enrollment Paperwork to Mira Costa

Mira Costa requires new enrollees to complete an online enrollment form and

submit documents to the school. (*See* AR Vol. III at 292, 364–65). G.C. attempted to complete the online enrollment form for both Student and Student's sibling; however, G.C. did not complete the online enrollment form for Student. (*Id.* at 218–19). G.C. testified she was unable to complete the online enrollment form for Student because it allowed her to select general education courses only—as opposed to an option to indicate Student has an IEP. (*Id.*). G.C. successfully completed the online enrollment form for Student's sibling. (*Id.* at 225–27). G.C. testified that she dropped off the required paperwork to obtain an IEP for Student[4] and enroll Student's sibling at Mira Costa on April 26, 2023. (*Id.* at 291–92). On Student's enrollment documents checklist G.C. submitted to Mira Costa along with some of the required documents, G.C. wrote "[Student] attends a private school and does not plan to attend school in the district but needs to be registered with the district because he has an IEP." (*Id.* at 43). Because G.C. had not completed the online enrollment form for Student, Mira Costa set aside the paperwork G.C. dropped off—which included proof of Student's residency within MBUSD. (*Id.* at 42).

### D.    May–September 2023 Correspondence with MBUSD

On May 3, 2023, an attorney at Adams's firm, Andrea Blair ("Blair"), emailed Vegas to follow up on Parents' request to convene an IEP meeting for Student. (*Id.* at 36). On May 5, 2023, after checking with other MBUSD staff, Vegas responded that MBUSD still did not have a registration record for Student. (*Id.*). On May 15, 2023, Janet Norris ("Norris"), an MBUSD Administrative Assistant, emailed Vegas to inform him Mira Costa had received enrollment documents for Student, but they had been set aside as no online enrollment form for Student had been completed. (*Id.* at 42; AR Vol. I at 91).

On May 16, 2023, Goldstein sent a letter from Adams via email to Vegas and Griss to follow up on Parents' prior requests to convene an IEP meeting and stated

---

[4] G.C. testified that she "wasn't trying to enroll [Student]. [She] was trying to get an IEP." (AR Vol. III at 291).

Parents had provided proof of residency on April 26, 2023. (AR Vol. III at 52–53). Griss responded that after researching the request again, Student never attended a MBUSD school nor does MBUSD have any IEP information for Student; Griss suggested Parents reach out to Student's prior school or RBUSD for more information about Student. (*Id.* at 50). Goldstein responded that day, without copying Vegas, and stated she understood MBUSD has no records for Student, referred Griss back to Adams' May 16 letter attached to her initial email that day, and stated Parents had verified residency within MBUSD and are requesting an IEP meeting. (*Id.* at 49). Griss responded later the same day, this time copying Vegas and his administrative assistant, and directed Blair to discuss the IEP meeting request with Vegas. (*Id.* at 49–50).

On May 25, 2023, Blair responded to Griss's May 16 email to reiterate Student had made three requests for an IEP meeting and that Student would file a due process complaint if MBUSD did not promptly convene an IEP team meeting. (*Id.* at 48; AR Vol. I at 276). As discussed further below, Parents filed their due process complaint on June 9, 2023, and an early resolution meeting was held on July 18, 2023. (AR Vol. I at 12, 410).

On August 16, 2023, Vegas sent Parents a prior written notice letter, an assessment plan, a fact sheet regarding parents' rights and procedural safeguards, and four copies of authorization forms to allow Student's prior schools to share information about Student with MBUSD. (AR Vol. III at 55–84). On August 23, 2023, Adams replied to MBUSD's counsel to confirm receipt of the August 16 correspondence and direct MBUSD to contact RBUSD to obtain a copy of Student's educational file. (AR Vol. I at 413).

On August 28, 2023, in response to the assessment plan proposed on August 16, Adams sent a letter addressed to MBUSD's counsel to request MBUSD's school psychologist reach out to Parents to discuss suspected areas of disability and provide additional information to the IEP team to ensure Student would not be unnecessarily evaluated in areas where he exhibits no need. (*Id.* at 379). Also on August 28, 2023,

MBUSD's counsel responded to Adams's August 23 email to inform Adams the authorization forms sent to Parents had not been signed and requested Parents do so. (*Id.* at 412). Between August 28 and September 8, 2023, MBUSD's counsel and Parents' counsel exchanged a series of emails in which they argued over whether California Education Code sections 49067(a)(1)(B) and 49068(d) allowed MBUSD to receive Student's records without Parents' consent; Student's counsel maintained the releases were unnecessary while MBUSD's counsel maintained they were required. (*Id.* at 408–12). However, on September 7, 2023, G.C. emailed the signed and completed authorization forms to MBUSD's school psychologist and consented to MBUSD's revised assessment plan. (*Id.* at 403).

### E.    Procedural History

On June 9, 2023, Student filed a due process complaint against MBUSD. (*Id.* at 12). On July 18, 2023, the parties unsuccessfully participated in an early resolution session to resolve the allegations in the due process complaint. (AR Vol. III at 57). On October 9, 2023, Student voluntarily dismissed his due process complaint without prejudice and filed an amended complaint on October 11, 2023. (AR Vol. I at 7–20). MBUSD made a settlement offer to Parents on December 29, 2023; however, Parents rejected the settlement offer. (DPB at 33–34).

ALJ Lucier conducted the due process hearing via videoconference on January 9, 10, 11, and 16, 2024. (ALJ Decision at 2). ALJ Lucier subsequently issued her decision on March 7, 2024. (*Id.*). In her decision, ALJ Lucier clarified and restated the issues Parents raised in their due process complaint as follows:

1. Did Manhattan Beach deny Student a free appropriate public education ("FAPE") during the 2022-2023 school year, beginning on April 18, 2023, by failing to provide Parents with an assessment plan within 15 days of Parents' request on April 3, 2023.

2. Did Manhattan Beach deny Student a FAPE, during the 2022-2023 school year, beginning on May 3, 2023, by failing to convene an IEP

team meeting within 30 days of Parents' written requests on: (a) April 3, 2023; (b) May 3, 2023; (c) May 16, 2023; and (d) May 25, 2023?

3. Did Manhattan Beach deny Student a FAPE, during the 2022-2023 school year, beginning on April 3, 2023, by failing to provide Parents with prior written notice in response to Parents' requests for IEP meetings on: (a) April 3, 2023; (b) May 3, 2023; (c) May 16, 2023; and (d) May 25, 2023?

4. Did Manhattan Beach deny Student a FAPE, during the 2022-2023 school year, beginning on April 3, 2023, by failing to provide Parents with prior written notice in response to Parents' request for assessment on April 3, 2023?

5. Did Manhattan Beach deny Student a FAPE, during the 2022-2023 school year by failing to ensure an interim IEP was in place upon Student's enrollment?

6. Did Manhattan Beach deny Student a FAPE during the 2022-2023 school year by failing to convene the mandatory resolution meeting within 15 days of receiving notice of Student's request for due process in Office of Administrative Hearings ("OAH") Case No. 2023060356, filed on June 9, 2023?

7. Did Manhattan Beach deny Student a FAPE, during the 2023-2024 school year by failing to have an IEP in place for Student prior to the 2023-2024 school year?

(*Id.* at 3–4 (citation modified)).

ALJ Lucier found for Student on issue one and found for MBUSD on issues two through seven. (*Id.* at 28–30). Both Parents and MBUSD seek partial reversal of the ALJ Decision. Parents seek an order from this Court that (1) reverses the ALJ Decision on issues two through seven, (2) awards Parents reasonable attorneys' fees incurred during the administrative hearing as a prevailing party on an issue of significance, and

(3) awards Parents reasonable attorneys' fees as a prevailing party in this appeal. (Student Compl. at 5–6). MBUSD seeks an order from this Court that (1) reverses the ALJ Decision on issue one, (2) finds MBUSD acted lawfully in accordance with the IDEA and California law, (3) finds Student is not entitled to the remedy ALJ Lucier ordered, and (4) finds Parents are not entitled to any award of attorneys' fees or costs. (MBUSD Compl. at ¶¶ 62–65).

On December 13, 2024, Parents filed a motion to supplement the administrative record; (Dkt. No. 46), MBUSD opposed. (Dkt. No. 51). Parents replied in support of their motion to supplement the record. (Dkt. No. 53). On January 29, 2025, the Court granted Parents' motion to supplement the record. (Dkt. No. 54). On June 18, 2025, Parents' counsel supplemented the record with A.L.'s deposition transcript. ("A.L. Dep.," Dkt. No. 61).

## II.    CONLCUSIONS OF LAW

### A.    Standard of Review

Under the IDEA, a party may challenge an adverse decision obtained through a due process hearing in a civil action. *See* 20 U.S.C. § 1415(i)(2)(A). In such an action challenging an administrative decision, the IDEA provides "the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." *Ojai*, 4 F.3d at 1471 (citing 20 U.S.C. § 1415(i)(2)(C)).

"Judicial review in IDEA cases 'differs substantially from judicial review of other agency actions, in which courts are generally confined to the administrative record and are held to a highly deferential standard of review.'" *M.C. ex rel. M.N. v. Antelope Valley Union High Sch. Dist.*, 858 F.3d 1189, 1194 (9th Cir. 2017) (citing *Ojai*, 4 F.3d at 1471). However, "[t]he fact that § 1415(e) requires that the reviewing court 'receive the records of the [state] administrative proceedings' carries with it the implied requirement that due weight shall be given to these proceedings." *Bd. of Educ. of*

*Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 206 (1982). "The level of deference the Court should provide the ALJ's decision 'is a matter of discretion of the courts.'" *N.G. v. ABC Unified Sch. Dist.*, 2014 WL 4678967, at *3 (C.D. Cal. Sept. 19, 2014), *aff'd*, 670 F. App'x 540 (9th Cir. 2016). "The court gives particular deference where the hearing officer's administrative findings are 'thorough and careful.'" *R.B. v. Napa Valley Unified Sch. Dist.*, 496 F.3d 932, 937 (9th Cir. 2007). A decision is thorough and careful "when the officer participates in the questioning of witnesses and writes a decision containing a complete factual background as well as a discrete analysis supporting the ultimate conclusions." *Id.* at 942.

Here, ALJ Lucier participated in the questioning of witnesses during a hearing that took place over four days. (ALJ Decision at 2; AR Vol. III at 316). ALJ Lucier wrote a thirty-two-page opinion replete with relevant details from the factual record. (ALJ Decision at 5–12). ALJ Lucier recited the relevant legal standards governing IDEA claims, analyzed the issues and arguments presented, and supported her conclusions with factual findings. (*See generally id.*). Accordingly, the ALJ Decision deserves particular deference. *See R.B.*, 496 F.3d at 942.

## B.    The IDEA

The IDEA guarantees a free appropriate public education ("FAPE") to children with disabilities. *Doug C. v. Haw. Dept. of Educ.*, 720 F.3d 1038, 1043 (9th Cir. 2013). The IDEA defines a FAPE as:

> special education and related services that (A) have been provided at public expense, under public supervision and direction, and without charge; (B) meet the standards of the State educational agency; (C) include an appropriate preschool, elementary school, or secondary school education in the State involved; and (D) are provided in conformity with the individualized education program required under section 1414(d) of this title.

20 U.S.C. § 1401(9). "The IDEA ensures that 'all children with disabilities have

available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living.'" *J.W. ex rel. J.E.W. v. Fresno Unified Sch. Dist.*, 626 F.3d 431, 432 (9th Cir. 2010) (quoting 20 U.S.C. § 1400(d)(1)(A)). "To accomplish this goal, the statute 'provides federal funds to assist state and local agencies in educating children with disabilities, but conditions such funding on compliance with certain goals and procedures.'" *Cnty. of San Diego v. Cal. Special Educ. Hearing Off.*, 93 F.3d 1458, 1461–62 (9th Cir. 1996) (quoting *Ojai*, 4 F.3 at 1469).

The party challenging the administrative decision to enforce their IDEA rights in federal court bears the burden of persuasion on each claim challenged. *Hood v. Encinitas Union Sch. Dist.*, 486 F.3d 1099, 1103 (9th Cir. 2007). Here, MBUSD challenges the ALJ Decision as to issue one and thus bears the burden of persuasion on that issue; Student challenges the ALJ Decision as to issues two through seven and thus bears the burden of persuasion on those issues.

### C.   Issue One: Failure to Timely Provide an Assessment Plan

ALJ Lucier concluded MBUSD denied Student a FAPE during the 2022–23 school year. (ALJ Decision at 5–13). ALJ Lucier found MBUSD provided parents with a written assessment plan five weeks late and that delay significantly impeded Parents' opportunity to participate in the assessment process. (*Id.*).

In *Capistrano Unified School District v. S.W.*, the Ninth Circuit held a district need not prepare an IEP for a parentally placed private school student. 21 F.4th 1125, 1138 (9th Cir. 2021). However, the court also held "when parents withdraw a student from public school and place her in private school, all they have to do is ask for an IEP, and then the district must prepare one." *Id.*; *see also Bellflower Unified Sch. Dist. v. Lua*, 832 F. App'x 493, 495–96 (9th Cir. 2020) ("The Department of Education's regulations implementing the IDEA specifically contemplate that, upon a parent's request, a school district must evaluate a child residing in its district for purposes of making a FAPE available to her, even if she is enrolled in a private school in another

district.")*. The *Capistrano* court reasoned, "such a request shows that the parents are at least nominally seeking a public education for their child." 21 F.4th at 1137. Thus, upon a student's parents' request, a school district must reevaluate the student for special education services. *Irvine Unified Sch. Dist. v. Landers*, 2023 WL 67874480, at *9 (C.D. Cal. Sept. 5, 2023). Unless the parties agree otherwise, "[w]ithin 15 days of a student's referral for assessment, the school district must provide a proposed assessment plan to the parents." *Id.* (citing Cal. Educ. Code § 56321(a)).

Here, ALJ Lucier found Parents' initial contact with MBUSD on April 3, 2022, failed to provide MBUSD with documentation sufficient to prove Student resided within MBUSD and confused MBUSD staff[5] as they had no record of Student attending any school within MBUSD. (ALJ Decision at 9–10). ALJ Lucier noted MBUSD and Parents' attorneys exchanged numerous emails after the initial April 3 communication wherein MBUSD (1) requested clarification as to whether Student resided in MBUSD, (2) asked if Parents were attempting to enroll student at Mira Costa, and (3) offered to assist Parents to enroll Student if they so desired. (AR Vol. I at 314–316; AR Vol. II at 101). After examining the parties' communications, ALJ Lucier found MBUSD received the requisite documentation from G.C. on April 26, 2023, when she dropped off enrollment paperwork at Mira Costa. (ALJ Decision at 12). Consequently, ALJ Lucier found MBUSD became obligated to provide an assessment plan for Student to Parents by May 11, 2023—fifteen days from April 26, 2023. (*Id.*). Accordingly, ALJ Lucier correctly held MBUSD procedurally violated the IDEA when it failed to provide that assessment plan to Parents by May 11, 2023. (*Id.*).

While "not all procedural violations deny the child a FAPE," the Ninth Circuit "more often than not" has held a procedural violation denies a student a FAPE if that

---

[5] Compounding the confusion was the incomplete enrollment paperwork G.C. provided Mira Costa on April 26, 2023. (AR Vol. III at 42). On the enrollment checklist form G.C. deposited at Mira Costa, G.C. wrote "[Student] attends a private school and does not plan to attend school in the district but needs to be registered with the district because he has an IEP." (*Id.* at 8).

student has already been identified as eligible for special education services under the IDEA. *See R.B.*, 496 F.3d at 938, 940–41. As ALJ Lucier stated in her decision, the IDEA provides that a procedural violation results in the denial of a FAPE when it (1) impedes the student's right to a FAPE, (2) significantly impedes the parent's opportunity to participate in the decision-making process regarding the provision of a FAPE, or (3) causes a deprivation of educational benefits. 20 U.S.C. § 1415(f)(3)(E)(ii). ALJ Lucier reasoned this procedural violation denied Student a FAPE during the 2022–23 school year because "it denied Parents the right to participate in the IEP process by delaying the assessment process." (ALJ Decision at 12).

MBUSD argues ALJ Lucier erred in finding MBUSD denied Student a FAPE during the 2022–23 school year because student was a parentally placed private school student without such an entitlement.[6] (DPB at 25–26). MBUSD relies on *Capistrano* and 34 C.F.R. § 300.137(a)[7] for the proposition that "parentally placed private school students with disabilities do not share the same entitlement to special education and related services as students who are enrolled in public schools." (DPB at 20, 25–26). However, such an interpretation of 34 C.F.R. § 300.137 would prevent any parentally placed private school student from evaluating the services their local public school may offer them. MBUSD's interpretation is thus unpersuasive and incompatible with *Capistrano*. As noted above, *Capistrano* holds all Parents needed to do was "ask for an IEP, and then the district must prepare one." 21 F.4th at 1138. MBUSD thus fails to carry its burden to show ALJ Lucier erroneously concluded MBUSD denied Student a FAPE during the 2022–23 school year by delaying the assessment process.

---

[6] MBUSD fails to argue its delay did not significant impede Parents' opportunity to participate in the decision-making process. (*See* DPB at 26 ("Even if District was required and failed to provide an assessment plan to Student . . . within 15 days of Parents' request, any delay by from [sic] District could not result in the denial of FAPE to Student as he had no individual entitlement to a FAPE.")).

[7] 34 C.F.R. § 300.137(a) states "[n]o parentally placed private school child with a disability has an individual right to receive some or all of the special education and related services that the child would receive if enrolled in a public school."

Accordingly, the Court **AFFRIMS** the ALJ Decision as to issue one.

### D.    Issue Two: Failure to Timely Convene an IEP Team Meeting

ALJ Lucier found Parents failed to show MBUSD was required to convene an IEP team meeting for Student during the 2022–23 school year because "Student failed to show Parents had ever consented to the initiation of special education services." (ALJ Decision at 18).

The Ninth Circuit has held a school district is required to convene an IEP team meeting, even though a student is a parentally placed private school, if that student's parents made clear they are interested in a public-school placement. *See Bellflower*, 832 F. App'x at 496. However, if the student's parent "refuses to consent to the initial provision of special education and related services, or the parent fails to respond to a request to provide the consent," the district "shall not be required to convene an IEP team meeting or develop an IEP" for special education and related services. Cal. Educ. Code § 56346(c) (citation modified); *see also* Cal. Educ. Code § 56346(g); 34 C.F.R. §§ 300.300(b), (d). ALJ Lucier thus held to prevail on issue two Parents must show they (1) intended to consider a public-school placement and (2) had either (a) previously consented to special education services in a different district, or (b) permitted MBUSD to assess Student and determine him eligible. (ALJ Decision 17–18).

First, ALJ Lucier examined whether Parents expressed a clear intention to keep Student enrolled in private school. (*Id.* at 15–16). ALJ Lucier considered the following as evidence Parents intended to keep Student in private school: (1) the veracity of G.C.'s testimony;[8] (2) that Parents signed an enrollment contract with, and paid a

---

[8] Parents argue ALJ Lucier's finding that G.C.'s testimony was not credible was erroneous because ALJ Lucier unfairly questioned G.C. about a lawsuit A.L. filed against RBUSD on Student's behalf. (PPB at 27). Parents thus provided supplemental evidence to rebut ALJ Lucier's credibility finding. (*See generally* A.L. Dep.). However, ALJ Lucier based her credibility finding on more than just G.C.'s statements about this lawsuit she allegedly had no part in. (ALJ Decision at 15). ALJ Lucier held G.C. "evaded most questions asked by Manhattan Beach's counsel and frequently stated she did not know or could not remember the answer to a question." (*Id.*). Upon review of

nonrefundable deposit to, Westmark; (3) that G.C. wrote Student attends a private school and does not plan to attend school in the district on the incomplete Mira Costa student enrollment checklist she submitted for Student; and (4) that during a resolution session with MBUSD, G.C. reiterated Student did not plan to attend public school in MBUSD. (*Id.* at 16). Conversely, ALJ Lucier considered that Parents' attorneys repeatedly told MBUSD Student was eligible for special education services and requested an IEP team meeting as evidence Parents were interested in a public school placement for Student and needed an offer of a FAPE to consider it. (*Id.*). ALJ Lucier ultimately concluded Parents' communication with MBUSD was muddled and Parents' conduct was ambiguous; however, taken as a whole, ALJ Lucier concluded Parents' communication did not establish a clear intention to keep Student enrolled in private school. (*Id.* at 16–17).

Second, ALJ Lucier considered whether Parents' communications, through their attorneys, were sufficient to obligate MBUSD to convene an IEP team meeting for Student. (*Id.*). ALJ Lucier found Parents' attorneys provided MBUSD with a draft copy of an initial assessment dated November 15, 2019, and an IEP dated November 10, 2021, that lacked a signature to indicate Parents consented to its implementation. (*Id.*). ALJ Lucier consequently reasoned the documents Parents submitted to MBUSD established RBUSD had assessed Student and found him eligible for special education services but not that Parents had ever consented to the initiation of such services. (*Id.*). ALJ Lucier thus held, without evidence of such consent, MBUSD was not legally obligated to treat Student as a child with a disability under the IDEA. (*Id.* at 18). Accordingly, ALJ Lucier found MBUSD did not deny Student a FAPE by failing to convene an IEP team meeting because MBUSD was not so required based on the April 3, May 3, May 16, or May 25, 2023 requests. (*Id.*).

---

the hearing transcript, the Court finds the record supports ALJ Lucier's credibility determination. (*See* AR Vol. III at 266–67, 271, 273, 279–80, 282, 289, 290–92, 296, 301–03, 306–08).

ALJ Lucier also found Parents limited MBUSD's access to information necessary to assess Student and convene the desired IEP team meeting. (ALJ Decision at 17–18). Parents argue they took no such obstructive action. (PPB at 18). However, when MBUSD asked Student's attorneys for Parents' consent to receive Student's records from RBUSD, Student's attorneys initially refused. (AR Vol. I at 404–14). Parents' attorneys did not refuse consent due to privacy concerns; rather, they refused consent based on their belief such consent was unnecessary. (*See id.*). This refusal delayed the process; Parents received MBUSD's requests for authorization on August 16 and did not sign and return those authorization forms until September 7. (*Id.*).

Moreover, the parties exchanged numerous emails between April 3 and May 25, 2023. (*Id.* at 318–64; AR Vol. III at 48–53; 101–08). Yet in none of these communications did Parents' attorneys clearly express Student previously attended an RBUSD school with an operative IEP and Parents now seek an offer of FAPE to consider for the 2023–24 school year. (*See id.*). This confusion lingered late into summer; Vegas stated in a letter to Parents dated August 16, 2023, that during the early resolution meeting on July 18, 2023, "G.C. stated that she did not complete the Online Enrollment Form for [Student] because he would be attending a private school and does not plan to attend school in the District." (AR Vol. III at 57). In that letter, Vegas further stated Parents still had not completed the registration process which continued to prevent MBUSD from finding Student's information in their system. (*Id.*).

Parents contend G.C.'s testimony and the November 2019 and November 2021 IEP documents clearly show Parents consented to the provision of special education services while Student attended public school in RBUSD. (PPB at 17). Thus, Parents argue ALJ Lucier erred by holding MBUSD was not required to consider Student a child with a disability under the IDEA. (*Id.*). Parents' argument is unpersuasive. As discussed above, ALJ Lucier held the documents Parents submitted to MBUSD in Spring 2023 failed to evince consent and thus failed to obligate MBUSD to convene an IEP team meeting within thirty days of the April and May requests. (ALJ Decision at

15–18). G.C.'s testimony at the due process hearing—which occurred months after the April and May requests—that she consented to the RBUSD IEP fails to show MBUSD was aware of such consent when it received Parents' attorneys' requests in April and May 2023. As G.C. testified, none of the boxes indicating parental consent were checked on the November 2021 IEP sent to MBUSD in April 2023. (AR Vol. III at 303). Parents' attorneys surely communicated RBUSD had assessed Student and developed an IEP. (AR Vol. I at 318–64). However, such communication was ambiguous as to IEP implementation because Student attended private school, and the outdated IEP provided lacked parental consent. (*Id.*).

Consistent with the statute and precedent discussed above, ALJ Lucier correctly held MBUSD was not obligated to convene an IEP team meeting until (1) Parents confirmed they previously consented to special education services while Student attended public school in RBUSD, or (2) MBUSD had completed its own assessment of Student. Consequently, Parents fail to meet their burden to show ALJ Lucier erroneously concluded Student was not entitled to an IEP team meeting within thirty days of Parents' attorneys' requests on April 3, May 3, May 16, and May 25, 2023.

Accordingly, the Court **AFFRIMS** the ALJ Decision as to issue two.

### E.    Issues Three and Four: Failure to Provide Prior Written Notice[9]

ALJ Lucier held MBUSD was not required to provide prior written notice ("PWN") to Parents during the 2022–23 school year because MBUSD was not "'proposing or refusing' to take any action with respect to Student from April 3, 2023, through June 15, 2023," the end of the 2022–23 MBUSD school year. (ALJ Decision at 21).

A school district must provide prior written notice to the parents of a student with

---

[9] ALJ Lucier elected to analyze issues three and four together as they both relate to MBUSD's alleged failure to provide Parents with prior written notice. Issue three relates to Parents' requests for an IEP team meeting and issue four relates to Parents' requests for an assessment of Student. (ALJ Decision at 19).

a disability whenever the district "(A) proposes to initiate or change; or (B) refuses to initiate or change the identification, evaluation, or educational placement of the child, or the provision of [FAPE] to the child." 20 U.S.C. § 1415(b)(3); 34 C.F.R. § 300.503(a). Parents argue MBUSD failed to provide PWN in response to their "numerous requests" made during the 2022–23 school year until August 16, 2023—over four months from the date they first requested an IEP assessment and team meeting. (PPB at 21). MBUSD argues ALJ Lucier correctly held PWN was unnecessary because MBUSD did not propose or refuse to act with respect to Student. (DOB at 20–21).

As ALJ Lucier found, Parents initiated contact with MBUSD on April 3, 2023, though their attorneys who requested an IEP assessment and team meeting. (ALJ Decision at 21; AR Vol. I at 314–16). MBUSD responded the following day and stated in bold print, neither Mira Costa nor MBUSD had any record of Student. (*Id.*). Parents' attorneys and MBUSD personnel proceeded to exchange numerous emails in which Parents' attorneys continued to request an assessment and team meeting, and MBUSD continued to inform them it had no record of Student. (AR Vol. I at 314–16, 372–74; AR Vol. II at 101–08; AR Vol. III at 33–34, 42–43).

ALJ Lucier consequently found MBUSD (1) "was in a process of dialogue, investigation, and problem solving"; (2) "did not agree, or refuse, to take any steps with respect to Student"; and (3) responded to Parents' requests reasonably and promptly. (ALJ Decision at 22–23). The Court thus agrees with ALJ Lucier that MBUSD was not obligated to send Parents PWN in response to their April 3, May 3, May 16, and May 25 requests because, at those times, MBUSD did not propose or refuse to take any action with respect to Student. Consequently, Parents cannot meet their burden to show ALJ Lucier erred as to issues three and four.

Accordingly, the Court **AFFIRMS** the ALJ Decision as to issues three and four.

### F.    Issue Five: Failure to Implement an Interim IEP

ALJ Lucier held MBUSD did not deny Student a FAPE by failing to develop an

interim IEP upon Parents' request because Student (1) was a parentally placed private school student and (2) lacked an operative IEP at the proposed time of transfer as "an unconsented to IEP cannot be the basis for providing interim services." (ALJ Decision at 23–25).

If a student who had an IEP in effect in the transferor district transfers school districts within the same state and academic year, the transferee school district must provide a FAPE to the student, including services comparable to those described in the student's IEP from the transferor district, until the transferee district either (1) adopts the transferor district's IEP or (2) develops, adopts, and implements a new IEP. *See* 20 U.S.C. § 1414(d)(2)(C)(i)(I); 34 C.F.R. § 300.323(e).

Parents argue MBUSD was obligated to develop an interim IEP at their request because RBUSD developed an IEP for Student during the 2021–22 school year and Parents provided it to MBUSD. (PPB at 22–23). Parents further contend MBUSD "should have contacted RBUSD to receive Student's educational records and any additional information necessary to develop an interim IEP for Student." (*Id.*). MBUSD argues ALJ Lucier correctly found MBUSD was not obligated to develop an interim IEP because Student was a parentally placed private school student when Parents requested the interim IEP. (DOB at 22).

ALJ Lucier, relying on § 1414(d)(2)(C)(i)(I) and *S.H. v. Mount Diablo Unified School District*, reasoned Student, as a parentally placed private school student, was ineligible for an interim IEP because the IDEA requires an interim IEP only if the student transfers from one public school district to another. (ALJ Decision at 24); 263 F. Supp. 3d 746, 758–59 (N.D. Cal. July 3, 2017) ("[T]he IDEA allows school districts to perform an 'interim IEP' when a student transfers mid-year from one school district to another and has an IEP in effect at the time of the transfer."). However, *S.H.* does not explicitly preclude interim IEP entitlement to students transferring into public schools from private schools. *See* 263 F. Supp. 3d at 758–59 (holding § 1414(d)(2)(C)(i)(I) "applies only to mid-year transfers" without explicitly holding it inapplicable to any

student who transfers from a private school). Nevertheless, 34 C.F.R. § 300.323(e) does lend support to ALJ Lucier's reasoning because it explicitly refers to "children who transfer *public agencies* in the same State." 34 C.F.R. § 300.232(e) (emphasis added).[10] Regardless of whether Section 1414(d)(2)(C)(i)(I) applies to students who transfer only from public school, Student was not seeking a mid-year transfer; thus, Section 1414(d)(2)(C)(i)(I) would not have applied to Student during the 2022–23 school year. (*See* AR Vol. III at 454 (During the administrative hearing, G.C testified, "[i]t wasn't my plan to move him in the middle of the school year, the 2022/2023 school year.")).

ALJ Lucier further held the November 2021 IEP Parents provided MBUSD failed to show Parents consented to its implementation. (AR Vol. I at 337; ALJ Decision at 24–25). Parents argue they did consent the IEP; however, Parents argument fails here for the same reason discussed above in Section II.D—MBUSD, at the time, lacked sufficient information from Parents to confirm the November 2021 IEP was ever in effect. Thus, the November 2021 IEP "lacked consent and therefore could not be used as a basis for providing interim services or developing an interim IEP." *S.H.*, 263 F. Supp. 3d at 760.

Relatedly, Parents argue MBUSD should have done more to obtain records from RBUSD. (PPB at 23). However, MBUSD attempted to obtain such information when it requested Parents authorize RBUSD to disclose Student's records. (AR Vol. I at 413–14). As ALJ Lucier found, "Parents and their attorneys took actions that limited Manhattan Beach's knowledge of Student's educational history in Redondo Beach and Manhattan Beach's ability to communicate with Redondo Beach." (ALJ Decision at

---

[10] The Court is skeptical the IDEA relinquishes a public school from its duty to implement an interim IEP simply because a private school student, who previously attended public school with an operative IEP, transfers mid-year to a different public school district. *See Reg'l Sch. Unit 51 v. Doe*, 920 F. Supp. 2d 168, 202 (D. Me. 2013) ("[T]he District makes too much of the fact that federal and state regulations spell out the obligation of a school district to provide a FAPE to, and adopt or develop and implement an IEP for, children transferring from one public agency to another within the same school year, but not children transferring from private schools.").

17). Consequently, Parents fail to meet their burden to show ALJ Lucier erroneously concluded MBUSD was not required to have an interim IEP in place for Student during the 2022–23 school year.

Accordingly, the ALJ Decision is **AFFIRMED** as to issue five.

### G.    Issue Six: Failure to Convene an Early Resolution Meeting

ALJ Lucier held MBUSD's failure to hold an early resolution meeting with Parents within fifteen days from the date Parents filed their initial due process complaint procedurally violated the IDEA. (*Id.* at 26). However, ALJ Lucier also held "Student failed to present evidence as to the impact of this delay on Student or Parents." (*Id.*).

34 C.F.R. § 300.510 prescribes a process to resolve a parent's due process complaint; it requires a school district to convene a meeting with the student's parent or guardian and relevant IEP team members within fifteen days after receiving notice of the due process complaint. 34 C.F.R. § 300.510(a)(1). The meeting's purpose is for the parties to discuss the due process complaint and the supporting factual allegations so the district may attempt to resolve the dispute. 34 C.F.R. § 300.510(a)(2). Section 300.510(b) provides that if the district fails to convene the resolution meeting specified in section (a) within fifteen days after receiving notice, "the parent may seek the intervention of a hearing officer to begin the due process hearing timeline." 34 C.F.R. § 300.510(b)(5).

Parents argue the "circumstances that led to the Parents' decision to file a complaint could have potentially been addressed prior to the start of the 2023–2024 school year if the resolution session had been held in a timely manner." (PPB at 23). MBUSD argues ALJ Lucier correctly decided MBUSD's procedural violation did not deprive Student of education benefits or impede Parents' opportunity to participate in the IEP process. (DOB at 23).

ALJ Lucier correctly held MBUSD procedurally violated the IDEA when it failed to convene a resolution meeting by June 24, 2023—fifteen days after Student filed his initial (and later voluntarily dismissed) due process complaint on June 9, 2023. (ALJ

Decision at 26). Further, ALJ Lucier correctly found Parents failed to present evidence that such delay impeded Student's right to a FAPE, significantly impeded Parents' opportunity to participate in the decision-making process, or deprived Student of educational benefits. (*Id.*). Thus, ALJ Lucier found Parents failed to carry their burden to show the procedural violation resulted in a substantive violation; nothing in the record contradicts this finding. Moreover, Parents' argument—that had the resolution meeting occurred the parties "could have addressed" Parents' various requests to MBUSD—is unpersuasive. As ALJ Lucier found, Parents chose not to "seek the intervention of a hearing officer to begin the due process hearing timeline"—the remedy the regulation explicitly permits. 34 C.F.R. 300.510(b)(5). Moreover, MBUSD held the resolution meeting on July 18, 2023, and the parties were unable to resolve their dispute. (*See* AR Vol. III at 409–10).

Parents thus fail to meet their burden to show ALJ Lucier erroneously concluded MBUSD's procedural violation did not result in a substantive violation. Accordingly, the ALJ Decision is **AFFIRMED** as to issue six.

## H.    Issue Seven: Failure to Timely Develop an IEP for the 2023–24 School Year

ALJ Lucier held MBUSD was not required to have an IEP in place for Student by the beginning of the 2023–24 school year because (1) absent evidence to show Parents consented to the initiation of special education services in a prior district, MBUSD was not required to consider Student a child with a disability under the IDEA and (2) based on the timing of Parents' requests for an IEP assessment and team meeting, MBUSD would not have been required to complete the assessment process prior to the start of the 2023–24 school year. (ALJ Decision at 28).

Parents argue "evidence was presented at [the] hearing identifying Student as a child eligible for special education and previously receiving special education services via an IEP." (PPB at 24). Thus, according to Parents, MBUSD was required to have an IEP in place for Student by the beginning of the 2023–24 school year. (*Id.*). MBUSD

argues ALJ Lucier was correct to hold evidence of consent was never provided to MBUSD. (DOB at 23).

The IDEA requires a school district to, at the beginning of each school year, have in effect an IEP for each child with a disability within its jurisdiction. 20 U.S.C. § 1414(d)(2)(A); Cal. Educ. Code § 56344(c). However, as discussed above in Section II.D, ALJ Lucier correctly concluded that absent evidence to show Parents previously consented to special education services for Student, MBUSD was not required to consider him a child with a disability under the IDEA. *See* 34 C.F.R. §§ 300.300(b)(3), (d)(4); Cal. Educ. Code §§ 56346(c), (g). Consequently, MBUSD was not required to have an IEP in place for Student based solely on the documents Parents' attorneys provided to MBUSD which, as discussed above, failed to evince RBUSD implemented the IEP it prepared in November 2021.

As discussed in Section II.D, however, MBUSD was required to assess Student and make an offer of a FAPE once Parents so requested. *See Capistrano*, 21 F.4th at 1138. Nevertheless, ALJ Lucier correctly concluded MBUSD was not required to complete the assessment process and develop an IEP prior to start of the 2023–24 school year given the date Parents requested the assessment. (ALJ Decision at 28).

As discussed in Section II.C, ALJ Lucier correctly found that MBUSD received confirmation of Student's residency and Parents' request for an offer of a FAPE on April 26, 2023. (ALJ Decision at 12). Thus, MBUSD was obligated to provide Parents with a written assessment plan by May 11, 2023. (*Id.*). ALJ Lucier then correctly found the California Education Code requires a school district to complete its assessment and develop an IEP within sixty days from the date a parent consents to an assessment plan—excluding "days between regular school sessions, terms, or days of school vacation in excess of five schooldays." Cal. Educ. Code § 56344(a); (ALJ Decision at 12). ALJ Lucier thus correctly found MBUSD was not required to complete the assessment and provide an IEP to parents before the 2022–23 school year ended on June 16, 2023, as parents consented to the assessment on September 7, 2023. (AR Vol. I at

303–04). Consequently, ALJ Lucier correctly held MBUSD did not deny Student a FAPE by failing to have an IEP in place at the beginning of the 2023–24 school year.

Parents thus fail to carry their burden to show ALJ Lucier erred in her decision on issue seven. Accordingly, the Court **AFFIRMS** the ALJ Decision as to issue seven.

## I. Remedies

ALJ Lucier held Plaintiff prevailed on issue one and MBUSD prevailed on issues two through seven. (ALJ Decision at 28–30). ALJ Lucier consequently ordered MBUSD to provide training to Mira Costa administrators regarding MBUSD's obligation to assess and make a FAPE available to parentally placed private school students residing within MBUSD. (*Id.* at 33).

In their Principal Trial Brief, Parents argue ALJ Lucier erred by denying them reimbursement for Student's private placement during the 2023–24 school year. (PPB at 25–26). MBUSD, in its Principal Trial Brief, argues (1) the training remedy ALJ Lucier ordered was inappropriate, (2) Parents are not entitled to reimbursement, (3) Parents are not entitled to attorneys' fees, and (4) its statutory offer of settlement was more favorable than the relief ultimately obtained by Parents. (DPB at 32–34). Parents counter in their Opposition Brief that (1) ALJ Lucier ordered an appropriate remedy, (2) Parents are entitled to attorneys' fees as a prevailing party on an issue of significance, and (3) MBUSD's settlement offer was overly broad and thus disqualified as a Statutory Offer of Settlement as defined under 20 U.S.C. § 1414(i)(3)(D). (POB at 9–14).[11]

The IDEA provides broad equitable authority to courts and hearing officers to grant appropriate relief to remedy a school district's failure to provide a FAPE to a disabled child. 20 U.S.C. § 1415(i)(2)(C)(iii); *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 244 n.11 (2009) (holding § 1415(i)(2)(C)(iii) applies to hearing officers). "Appropriate relief is relief designed to ensure that the student is appropriately educated

---

[11] The Court defers ruling on Plaintiffs' request for attorneys' fees until the issue is fully briefed. (*See* Dkt. No. 75).

within the meaning of the IDEA." *Parents of Student W. v. Puyallup Sch. Dist., No. 3*, 31 F.3d 1489, 1497 (9th Cir. 1994). In determining what relief is appropriate, the hearing officer must review the conduct of both parties. *Id.* at 1496.

### 1.    Training for Mira Costa Personnel

ALJ Lucier carefully examined the parties' conduct and ordered a remedy that adequately addressed MBUSD's conduct which led to the denial of a FAPE to Student in the 2022–23 school year. (ALJ Decision 31–33).

On May 15, 2023, Norris emailed Vegas to confirm she had received enrollment paperwork for Student but set it aside because it lacked a completed online enrollment form. (AR Vol. III at 42). The paperwork included a new student enrollment checklist with G.C.'s handwritten note that attempted to explain she wanted to "register[] [Student] with the district because he has an IEP." (*Id.* at 43). ALJ Lucier held MBUSD's confusion at receiving such a request for a private school student for which MBUSD had no records caused MBUSD's failure to timely provide Parents with an assessment plan. (ALJ Decision at 33). Reasoning that Mira Costa lacked an efficient system for processing requests from parents for students it has no records for, ALJ Lucier determined staff training was an appropriate remedy. (*Id.*). The Court agrees.

In examining both parties' conduct, the Court finds both bear some responsibility for the delayed assessment plan. MBUSD should have been more proactive regarding the incomplete paperwork; however, Parents, through their attorneys, failed to clearly address Mira Costa's prompt, repeated insistence it had no records for Student. Training ensures Mira Costa is better prepared to avoid this situation in the future.

Accordingly, the ALJ Decision is **AFFIRMED** as to the personnel training remedy ordered.

### 2.    Tuition Reimbursement

ALJ Lucier carefully examined the relevant regulations and held reimbursement for tuition and related transportation costs Parents incurred for the 2023–24 school year was inappropriate. (ALJ Decision at 32–33).

Parents who believe their child was denied a FAPE and thus unilaterally enroll their child in private school may seek reimbursement for tuition and related costs. 34 C.F.R. § 148(c); *see also Landers*, 2023 WL 67874480, at \*3. However, as ALJ Lucier noted, the plain language of § 300.148(c) requires the hearing officer to find the school district "had not made FAPE available to the child in a timely manner *prior* to that enrollment." 34 C.F.R. § 300.148(c) (emphasis added); *see also C.H. v. Cape Henlopen School Dist.*, 606 F.3d 59, 72 (3rd Cir. 2010) ("The IDEA was not intended to fund private school tuition for the children of parents who have not first given the public school a good faith opportunity to meet its obligations."). Moreover, "[b]ecause reimbursement is a form of discretionary equitable relief, a court must also assess the reasonableness of both parties' conduct to determine whether reimbursement is warranted." *D.R. ex rel. R.R. v Redondo Beach Unified Sch. Dist.*, 56 F.4th 636, 647 (9th Cir. 2022). A relevant factor is the "parties' level of cooperation during the IEP process." *Id.*

Reimbursement is inappropriate here because, as ALJ Lucier reasoned, § 300.148(c) required Parents to timely seek an offer of FAPE prior to enrolling their child in private school. (ALJ Decision at 32–33); 34 C.F.R § 300.148(c). ALJ Lucier correctly found Student attended Westmark for the 2022–23 school year and Parents signed an enrollment contract and paid a nonrefundable deposit for the 2023–24 school year on March 23, 2023—prior to their first contact with MBUSD on April 3, 2023. (AR Vol. III at 101–07). Further, G.C. testified she would not move Student mid-year; as discussed in Section II.H, Parents were not entitled to an offer of FAPE from MBUSD until the 2023–24 school year had already begun based on the date of their April 2023 request. ALJ Lucier thus concluded the evidence presented strongly suggested Parents intended to keep Student enrolled at Westmark regardless of whether MBUSD offered Student a FAPE. (ALJ Decision at 32–33).

Parents' conduct also supports ALJ Lucier's conclusion that reimbursement is inappropriate. As discussed, Parents, through their attorneys, initially confused

MBSUD as to what they sought for Student and were less than prompt in clearing up that confusion. Parents attempted to request Student's records, an assessment plan, and an IEP team meeting on April 3; MBUSD responded the next day and stated in bold print it had no records for Student. (AR Vol. I at 314–16). Rather than asking what MBUSD would need to facilitate the process, Goldstein responded, "Thank you, received and acknowledge. We await the District's IEP meeting notice and assessment plan as requested in the letter." (AR Vol. I at 314–16). MBUSD reiterated the unaddressed issue stated in its prior response to Parents' attorneys—that they had no records for Student—on April 14 through email and voicemail, yet Parents failed to provide the required documents until April 26. (*Id.* at 314–16, 376). Parents conduct is thus inconsistent with their stated goal of receiving an offer of FAPE prior to the start of the 2023–24 school year. MBUSD surely should not have set aside the paperwork it received on April 26, but such conduct occurred after Parents had already delayed the process by over three weeks. Consequently, the parties' conduct supports ALJ Lucier's conclusion that reimbursement is an inappropriate remedy here.

Accordingly, the ALJ Decision is **AFFRIMED** as to the denial of tuition and transportation cost reimbursement for the 2023–24 school year.

## III.   CONCLUSION

For the reasons set forth above, the ALJ Decision is **AFFIRMED**. This order constitutes notice of entry of judgment pursuant to Federal Rule of Civil Procedure 58. Pursuant to Local Rule 58-6, the Court **ORDERS** the Clerk to treat this order, and its entry on the docket, as an entry of judgment.

**IT IS SO ORDERED.**

Dated: November 19, 2025

_____
HON. ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT JUDGE